DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner.

v.

Elizabeth O'KEEFE, Respondent.

No. 75–2297.

United States Court of Appeals, Third Circuit.

Argued May 6, 1976.

Decided Oct. 12, 1976.

As Amended Nov. 2, 1976.

**338**

William J. Kilberg, Sol. of Labor, Laurie M. Streeter, Associate Sol., Joshua T. Gillelan, II, U.S. Dept. of Labor, Washington, D.C., for petitioner.

Paul R. Anapol, Sol H. Weiss, Philadelphia, Pa., for respondent.

Before ALDISERT, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

On this petition for review of a final order of the Benefits Review Board we are again asked to resolve problems arising under the 1972 amendments to the Longshore-men's and Harbor Workers' Compensation Act (LHWCA),[1] 33 U.S.C. § 901 *et seq.* (Supp.1976).[2] Specifically, this petition presents the question of whether weekly death benefits payable under § 9 of the LHWCA as amended, 33 U.S.C. § 909 (Supp.1976), are subject to the limitations prescribed by § 6(b)(1) as amended, 33 U.S.C. § 906(b)(1) (Supp.1976), or whether such benefits are unlimited in amount. We conclude, contrary to the Benefits Review Board, that § 6(b)(1) does impose a ceiling upon weekly death benefits and accordingly grant the petition for review.

## I.

On March 30, 1974 respondent Elizabeth O'Keefe's husband, Joseph O'Keefe, during the course and scope of his maritime employment was struck by a jitney and immediately killed. His average weekly wage at the time of death was $571.84, and the respondent was his only survivor. The decedent's employer, Morris Boney, Inc., and its insurance carrier, Liberty Mutual Insurance Co., stipulated that the respondent was entitled to the maximum benefits payable under the LHWCA. However, the parties were unable to reach agreement as to what constituted the maximum weekly death benefit payable to the respondent under the statute. 33 U.S.C. § 909 (Supp. 1976). The respondent contended that under the 1972 amendments she was entitled to death benefits equal to 50 per cent of the deceased's average weekly wage or $285.92 subject to no limitations. 33 U.S.C. § 909(b).[3] In response the employer and insurance carrier urged that although respondent was entitled to death benefits based upon the formula of 50 per cent of

---

1. Pub.L. 92–576, 86 Stat. 1251.

2. Previously, we have dealt with other issues arising from the 1972 amendments in *Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs*, 542 F.2d 602 (3d Cir. 1976) (exhaustion of administrative remedy; second injury disabilities; attorney's fees); *Nacirema Operating Co. v. Benefits Review Board*, 538 F.2d 73 (3d Cir. 1976) (existing disability); *Sea-Land Service, Inc. v. Director,*

*Office of Workers' Compensation Programs,* 540 F.2d 629 (3d Cir. 1976) (scope of coverage).

3. § 9(b) of the LHWCA, 33 U.S.C. § 909(b) (Supp.1976) provides with respect to death benefits payable:

   If there be a widow . . . and no child of the deceased, to such widow . . . 50 per centum of the average wages of the deceased during widowhood . . . ..

the deceased's average weekly wage that sum was nevertheless subject to the limitations of § 6(b)(1), 33 U.S.C. § 906(b)(1)[4] which would result in a weekly benefit less than $285.92.

Their dispute as to the amount of the death benefit payable was referred to an administrative law judge for hearing and decision. *See* 33 U.S.C. § 919 (Supp.1976). The administrative law judge, relying upon the Benefits Review Board's decision in *Rasmussen v. Geo Control Inc.,* 1 BRBS 378, BRB 74–204 (April 3, 1975)[5] rejected the employer's and the carrier's contention that death benefits were limited by the amended § 6(b)(1). Accordingly, the respondent was awarded 50 per cent of the average weekly wage of the decedent or $285.92 from March 30, 1974 and continuing during her widowhood. 33 U.S.C. § 909(b) (Supp.1976).

The employer, insurance carrier, and the Director of the Office of Workers' Compensation Programs (Director), appealed to the Benefits Review Board urging that the *Rasmussen* case had been erroneously decided.[6] However, the Board declined to reverse its earlier holding and therefore affirmed the decision and order of the administrative law judge. *O'Keefe v. Morris Boney, Inc.,* 2 BRBS 363, BRB Nos. 75–179, 75–179A (October 16, 1975).

This petition for review was filed by the Director from the final decision of the Benefits Review Board. Our jurisdiction is predicated upon 33 U.S.C. § 921(c) (Supp. 1976).[7]

**4.** The provisions of § 6(b)(1), 33 U.S.C. § 606(b)(1) (Supp.1976) are set out in the text at p. 6 *infra.*

**5.** Petitions for review of the Benefits Review Board's decision in *Rasmussen* were filed on May 8 and 29, 1975 in the Ninth Circuit at Nos. 75–2038, 75–2171. These cases have as yet not been heard or decided.

**6.** The employer and insurance carrier also challenged the administrative law judge's award of an attorney's fee. However, that issue and the Benefits Review Board's disposition thereof are not before us here.

**7.** 33 U.S.C. § 921(c) (Supp.1976) states in pertinent part:

## II.

The 1972 amendments to the LHWCA constituted a major restructuring of the rights of longshoremen and harbor workers with respect to total disability and death benefits. Prior to 1972 an employee covered by this statute who suffered permanent total disability was entitled to compensation equal to 66⅔ per cent of his average weekly wage. 33 U.S.C. § 908(a). However, former § 6(b) provided that "[c]ompensation for disability shall not exceed $70 per week." 33 U.S.C. § 906. Regardless of an employee's average weekly earnings, in the event of permanent total disability his benefits were limited to a maximum of $70 per week.

Where injury resulted in death, former § 9 specified the amount of the death benefit payable to the employee's survivors. Under that section the surviving wife was entitled to 35 per cent of the average wages of the deceased. An additional 15 per cent of the wages of the deceased was allowed for each surviving child, subject to the limitation that the total amount payable under former § 9(b) "shall in no case exceed 66⅔ per centum of such wages." 33 U.S.C. § 909(b). Furthermore, like the total disability benefit, the death benefit was limited by a maximum monetary sum. Former section 9(e) stated that "[i]n computing death benefits the average weekly wages of the deceased shall be considered to have been not more than $105 . . . ." 33 U.S.C. § 909(e). Therefore, despite the actual wages of a deceased employee, if his

(c) Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. . . . Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified.

family qualified for the maximum death benefit of 66⅔ per cent of the decedent's average weekly wage, that family would be entitled to a maximum benefit of $70 per week (66⅔ per cent of $105).

Therefore, prior to the enactment of the 1972 amendments, both total disability and death benefits were limited by a fixed dollar maximum of $70 per week irrespective of the actual average weekly earnings of an employee.

In the years following 1961, when the fixed weekly maximum of $70 was established for both total disability and death benefits,[8] it became increasingly evident that this level of compensation was grossly inadequate. By 1972 congressional reports indicated that the average weekly wage for private, nonagricultural employees was $135 a week and that longshoremen averaged over $200 per week in some ports. H.R.Rep.No.92–1441, 92d Cong.2d Sess. (1972), 1972 U.S.Code Cong. & Admin.News, pp. 4698, 4699; S.Rep.No.92–1125, 92d Cong.2d Sess. 4 (1972). The $70 limitation precluded most employees or their survivors from receiving 66⅔ per cent of their average weekly wages, and in some cases the $70 maximum constituted as little as 30 per cent of an employee's average weekly wage. S.Rep.No.92–1125, 92d Cong.2d Sess. 5 (1972). Congress recognized that in order to provide an adequate income replacement for the families of disabled and deceased workers, a "substantial increase in benefits" was urgently required.[9]

The 1972 amendments leave unchanged the basic formula for determining compensation for permanent total disability—66⅔ per cent of the average weekly wage. 33 U.S.C. § 908(a) (Supp.1976). However, § 6(b)(1), as amended, replaces the $70 maximum limitation by creating an entirely new limitation for disability benefits. That section now provides in relevant part:

(b)(1) . . . compensation for disability shall not exceed the following percentages of the applicable national average weekly wage as determined by the Secretary . . .

(A) 125 per centum or $167, whichever is greater, during the period ending September 30, 1973.

(B) 150 per centum during the period beginning October 1, 1973, and ending September 30, 1974.

(C) 175 per centum during the period beginning October 1, 1974, and ending September 30, 1975.

(D) 200 per centum beginning October 1, 1975.

33 U.S.C. § 906(b) (Supp.1976). The establishment of 200 per cent of the applicable average national weekly wage as the maximum weekly disability payment (or any of the lesser percentages during the transition period to October 1, 1975), constituted a substantial increase over the prior $70 per week maximum. Under this new provision the Senate Committee on Labor and Public Welfare estimated that approximately 90 per cent of the workers covered by the statute would receive benefits which would equal 66⅔ per cent of their average weekly wages. S.Rep.No.92–1125, 92d Cong.2d Sess. 5 (1972). Moreover, this limitation, while reflecting changes in the national average weekly wage, would serve precisely the same purpose as had the old $70 maximum—to fix a ceiling upon compensation payments to workers with especially high average weekly earnings. *Id.*

While the limitation provisions concerning total disability are clear, unfortunately the 1972 amendments as they pertain to death benefits do not partake of that same clarity. The death benefit amendments increase the surviving spouse's benefit from thirty-five per cent to fifty per cent of the deceased's average weekly wage. *See* n.3 *supra.* For each surviving child an addi-

---

8. Pub.L. 87–87, 75 Stat. 203.

9. Congress, as a *quid pro quo* for the increase in employee and survivor benefits made compensation under this statute the exclusive remedy against the employer. *See* 33 U.S.C. § 905

(Supp.1976); *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 38–41 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

tional benefit of 16⅔ per cent (rather than the former 15 per cent) of the deceased's average weekly wage is payable. These benefits remain subject to the same earlier limitation that "the total amount payable shall in no case exceed 66⅔ per centum" of the deceased's average weekly wage. 33 U.S.C. § 909(b) (Supp.1976).

The most important change in § 9 with respect to the maximum benefits payable is found in subsection (e). Unlike the original subsection (e)[10] which effectively established both a minimum and a $70 per week maximum benefit, the amended subsection (e)[11] establishes only a minimum benefit and is silent with respect to the maximum weekly death benefit payable. It is the absence of any express limitation upon death benefits in § 9 that has resulted in this litigation.

Although the 1972 amendments seemingly do not address the question of maximum death benefits, there is one subsection which arguably imposes the same limitations upon death benefits as are imposed upon total disability benefits. As previously discussed, § 6(b)(1), as amended, 33 U.S.C. § 906(b)(1) (Supp.1976), fixes a ceiling on disability benefits ultimately reaching 200 per cent of the applicable national average weekly wage. That section is followed by a new § 6(d), 33 U.S.C. § 906(d) (Supp.1976), which states:

> Determinations under this subsection with respect to a period shall apply to employees *or survivors* currently receiving compensation for permanent total disability *or death benefits* during such period, as well as those newly awarded compensation during such period. (Emphasis added.)

This subsection specifically refers to both disability and death benefits. However, it is unclear from the language what "determinations" are being made applicable to recipients of disability and death benefits. The parties urge that the question presented to us, whether death benefits are subject to the same limitation as are disability benefits, ultimately depends upon the meaning of § 6(d).

### III.

The Benefits Review Board's affirmance of the administrative law judge's award here is based upon its earlier decision in *Rasmussen v. Geo Control Inc., supra.* In *Rasmussen* the Board held that death benefits under the 1972 amendments are not subject to any limitation. It is to this analysis that we now turn.

In its opinion the Board recognized that the absence of any limitation upon the amount of death benefits payable under the statute as amended would create "an anomalous situation." App. at 18. For if an employee were permanently disabled, his maximum compensation would be limited by § 6(b)(1) regardless of his actual earnings. However, "[i]f the same employee subsequently died, or if he had been killed outright in the accident, his survivors could be entitled to a larger sum in death benefits than was payable in disability compensation." App. at 19.

Based upon this apparent incongruity, the Board looked beyond the "plain language" to consider "persuasive evidence of legislative intent." App. at 19. Specifically, the Board relied upon the Senate and House Committee reports explaining the effects of the amendments upon disability and death benefits. *See* S.Rep.No.92–1125, 92d Cong.2d Sess. (1972); H.R.Rep.No.92–1441, 92d Cong.2d Sess. (1972). In particular, the Board found no references in the legislative

---

**10.** § 9(e), 33 U.S.C. § 909(e) provided:

(e) In computing death benefits the average weekly wages of the deceased shall be considered to have been not more than $105 nor less than $27 but the total weekly compensation shall not exceed the weekly wages of the deceased.

**11.** § 9(e), as amended, 33 U.S.C. § 909(e) (Supp.1976), states:

(e) In computing death benefits the average weekly wages of the deceased shall be considered to have been not less than the applicable national average weekly wage as prescribed in section 906(b) of this title but the total weekly benefits shall not exceed the average weekly wages of the deceased.

commentary that the death benefits under § 9, as amended, were to be subject to the same limitations as disability benefits. Nor did the Board find in the explanation of § 6(b)(1) any indication that the limitations upon disability benefits were also applicable to death benefits. Thus, the Board reasoned:

> In the absence of any evidence to the contrary, we must conclude that elimination of the maximum provided for disability cases from death benefits cases was intentional. The maximum limit on death benefits is provided in Section 9(b), 33 U.S.C. § 909(b), and relates solely to the employee's actual weekly wages.

App. at 22.

In reaching this conclusion the Board rejected the Director's argument that the new § 6(d), 33 U.S.C. § 606(d) (Supp.1976), imposed a ceiling upon death benefits. With little explanation the Board embraced the administrative law judge's conclusion that § 6(d) applied only to minimum benefits. App. at 24.

It is this decision in the *Rasmussen* case which both the administrative law judge and the Board relied upon in concluding that death benefits payable to the respondent here were properly calculated as 50 per cent of the decedent's average weekly wage unlimited by the provisions of § 6(b)(1).

### IV.

The parties dispute both the appropriate scope of our review of the Board's decision as well as the meaning of the 1972 amendments. The Director argues that the deference owing to an agency's construction of a statute must be accorded to him for "[i]t is he who has the administrative responsibilities under the Act which are the source of the weight to be given a statute's 'agency' construction." Brief for Petitioner at 10. On the merits, the Director contends that § 6(d), properly construed, makes the limi-

tations of § 6(b)(1) applicable to death as well as to total disability benefits. Therefore, the Director concludes that the death benefits payable to the respondent must be calculated with reference to § 6(b)(1).

Respondent O'Keefe urges that the construction of the amendments rendered by the Board, as the agency charged with its administration, is entitled to great deference by this Court. With respect to the question of whether death benefits payable under § 9, as amended, are subject to any limitation, the respondent articulates alternative positions. First, she contends that the amended statute has clearly eliminated any limitation upon death benefits and hence further examination into legislative history becomes unnecessary. Second, assuming that the statutory language is ambiguous, she argues that the Board's interpretation "should be followed since there are no compelling indications that its interpretation is erroneous." Brief for Respondent at 18–19.

### V.

#### A.

The issue before us is strictly one of statutory construction.[12] Each party contends that we must show "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). However, the parties disagree as to whether this deference is owing to the Board or to the Director.

These competing assertions arise from the administrative procedure created by Congress for the resolution of compensation disputes. Under the statutory scheme the Secretary of Labor is authorized and empowered to administer all provisions of LHWCA. 33 U.S.C. § 939. These powers have been in turn delegated by the Secretary to the Office of Workmen's Compensa-

---

12. We are not called upon to review inferences drawn by an administrative agency from what it has found to be the basic facts. *Cf. O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.,*

380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); *Cardillo v. Liberty Mutual Insurance Co.,* 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).

tion Programs. 20 C.F.R. §§ 701.201, 701.-202 (1975). Most of the actual administration of the statute is effected by deputy commissioners who are authorized by the Director to process and determine claims for compensation in the various compensation districts of the country. *See,* 33 U.S.C. §§ 939, 940 (Supp.1976); 20 C.F.R. § 701.-301(a)(7). It is only where the deputy commissioner is unable to secure agreement on all issues through informal conferences that the matter is referred to an administrative law judge for hearing and decision. 33 U.S.C. § 919 (Supp.1976); 20 C.F.R. § 702.-316 (1975).

Under the 1972 amendments, provision has been made for an administrative appeal which is required before judicial review is available.[13] Thus, parties aggrieved by decisions of the administrative law judge may appeal to the Benefits Review Board of the Department of Labor. This Board, which is "quasi-judicial in nature", 20 C.F.R. § 801.-103 (1975), is authorized "to hear and determine appeals raising a substantial question of law or fact . . . from decisions with respect to claims of employees . . . ." 33 U.S.C. § 921(b)(3) (Supp. 1976). It is only after this "internal administrative review of initial decisions in contested cases," 1972 U.S.Code Cong. & Admin.News, pp. 4698, 4709, that judicial review before the Court of Appeals is available. 33 U.S.C. § 921(c) (Supp.1976).

■ Based upon our reading of the statute, we conclude that neither the Director of the Office of Workmen's Compensation Programs nor the Benefits Review Board is entitled to "great deference" in the interpretation of the 1972 amendments. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). First, neither the Director nor the Board is the officer or agency charged with the administration of the statute. While the Director is authorized by Congress to administer the statute he does not resolve disputed legal issues in-

volving the LHWCA. Substantial questions of law arising in an adversarial context are specifically reserved for decision first by administrative law judges and then by the Board. Moreover, the Board is only a quasi-judicial body presented with select cases and not an agency involved in the overall administration of the statute. Congress has thus divided the various functions involved in administering the statute between two different arms of the Department of Labor. We know of no authority which would require judicial deference to either one arm or the other under these circumstances.

■ Second, the task of statutory construction is one of discerning "the intent of the legislature." *United States v. Papercraft Corp.,* 540 F.2d 131, at 136 (3d Cir. 1976). Neither the Director nor the Board possesses or has exercised any special expertise in this endeavor. The analysis of each is based solely upon the text of the amendments and the legislative history. We are thus faced with a question of law over which this Court has always exercised plenary, *de novo* review. *See Western Union Telegraph Co. v. FCC,* 541 F.2d 346, 356–357 (3d Cir. 1976) (Garth, J. dissenting). Consequently, we reject the arguments of both the petitioner and respondent with respect to our scope of review and proceed to exercise an independent judgment as to the statutory issue presented. *See Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35, 48–50 (2d Cir. 1976); *Sea-Land Service, Inc. v. Director, Office of Workers' Compensation Programs,* 540 F.2d 629 (3d Cir. 1976).

### B.

The ultimate issue before us—whether death benefits are subject to any limitation—cannot be answered by reference to § 9(e) alone. As previously discussed (*see* II *supra*), this section as amended only establishes a minimum death benefit; it is com-

---

**13.** Before 1972, decisions of the deputy commissioner were immediately reviewable in the district court. 33 U.S.C. § 921. Moreover, all compensation orders were decisions of the dep-

uty commissioners since the requirement that hearings be conducted by administrative law judges in accordance with 5 U.S.C. § 554 was enacted as part of the 1972 amendments.

pletely silent with respect to any maximum.[14] (*See* n. 11 *supra*). Nor is this silence dispositive of the issue presented as the respondent argues. For § 6 which establishes a maximum upon total disability benefits in subsection (b)(1), specifically refers to both total disability *and* death benefits in subsection (d). Therefore, we turn to § 6(d) as did both parties to determine whether that subsection limits death benefits payable under § 9.

The meaning of § 6(d) is carefully hidden by the obscurity of the text:

(d) Determinations under this subsection with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period.

33 U.S.C. § 906(d) (Supp.1976). We begin our analysis with the phrase "this subsection", for it is only "[d]eterminations under *this subsection*" that are made applicable to those receiving disability or death benefits. Clearly the phrase does not refer to § 6(d) itself since § 6(d) does not include any "[d]eterminations . . . with respect to a period." Based upon an analysis of the text as well as the legislative history, we conclude that "this subsection" refers to the subsection of the 1972 Act to amend the LHWCA, P.L. 92–576, which included § 6(d).[15]

The new § 6(d), along with the other amendments to § 6, appeared in subsection (a) of § 5 of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972.[16] Reading the reference to

"this subsection" in § 6(d) as meaning § 5(a) of the 1972 Amendments gives the entire phrase meaning, since "[d]eterminations . . . with respect to a period" were provided for in other parts of § 5(a). In particular we refer to the determinations required under § 6(b)(1).

As previously discussed, § 6(b)(1) by its terms establishes a maximum disability benefit based on 200 per cent of the national average weekly wage. However, Congress provided that the 200 per cent maximum would be gradually reached over a multi-year phase-in. During this transition, compensation for disability was not to exceed a specified percentage of the national average weekly wage for the particular period of the phase-in. Thus, § 6(b)(1) requires "[d]eterminations . . . with respect to a period" during each one of the phase-in periods.

Based upon our interpretation of the phrase "this subsection", we construe § 6(d) as making determinations such as those required in § 6(b)(1) applicable to "employees *or survivors* currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period." (Emphasis added.) The meaning of § 6(d) thus becomes apparent. Under § 6(b)(1)(B) benefits awarded between October 1, 1973 and September 30, 1974 may not exceed 150 per cent of the national average weekly wage. Thereafter, benefits awarded beginning October 1, 1974 and ending September 30, 1975 cannot exceed 175 per cent of the national average wage under § 6(b)(1)(C). Section 6(d) serves to

---

**14.** Nor are the House and Senate Committee Reports helpful in explaining this silence with regard to maximum death benefits. The House Report, H.R.Rep.No.92–1441, 92d Cong., 2d Sess. (1972), 1972 U.S.Code Cong. & Admin. News, pp. 4698, 4716, merely restates the obvious effect of the 1972 amendments upon § 9:

Subsection (d) of this section amends section 9(e) of the Act, eliminating the dollar minimum and maximum set out under persent [sic] law for the average weekly wages of the deceased to be used in computing death benefits. The minimum substituted by this amendment is the applicable national average weekly wage as prescribed in section

6(b) of the Act, except that the total weekly benefits may not exceed the actual average weekly wages of the deceased.

The Senate Report provides even less analysis of the changes in § 9. *See* S.Rep.No.92–1125, 92d Cong., 2d Sess., 6, 22 (1972).

**15.** The parties do not dispute the meaning of "this subsection" in § 6(d).

**16.** § 5(a) of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, P.L. 92–576, is set out in Appendix A of this opinion.

insure that the recipients of either disability *or* death benefits during the phase-in period will receive the current maximum for that period regardless of whether they have been receiving such benefits since an earlier period or whether they were just awarded compensation during that period. Therefore, a person awarded benefits during the § 6(b)(1)(B) period and limited by the maximum of 150 per cent of the national average weekly wage will be subject to the new maximum of 175 per cent of the national average weekly wage from the beginning of the § 6(b)(1)(C) period just as someone awarded benefits during the § 6(b)(1)(C) period.

This interpretation of § 6(d) is supported by the little legislative history available. Both the Senate and House Committee reports explain § 6(d) as follows:

> To the extent that employees receiving compensation for total permanent disability *or survivors receiving death benefits* receive less than the compensation they would receive if there were no phase-in, their compensation is to be increased as the ceiling moves to 200 percent. (Emphasis added.)

S.Rep.No.92–1125, 92d Cong., 2d Sess. 5 (1972): H.R.Rep.No.92–1441, 92d Cong., 2d Sess. (1972), U.S.Code Cong. & Admin. News, pp. 4698, 4700. Hence, disability and death benefits are to increase as the phase-in periods move to the ultimate maximum of 200 per cent of the national average weekly wage.

Implicit in our interpretation of § 6(d) is the conclusion that this section establishes a maximum limitation upon death benefits payable under § 9. Section 6(d), as we have stated, applies to "employees *or* survivors . . . receiving compensation for permanent total disability or death benefits . . . ." (Emphasis added.) Furthermore, our analysis and the leg-

islative history reveal that § 6(d) allows for an upward adjustment of maximum disability or death benefits during the phase-in period under § 6(b)(1). If death benefits are subject to the phase-in provisions of § 6(b)(1), as the Committee reports and both the Senate and House indicate, then they, like disability benefits, must be limited in amount. Thus, we conclude that § 6(d) makes the limitations of § 6(b)(1) with respect to total disability benefits applicable to death benefits as well. We reach this conclusion cognizant that the question, due to the ambiguity of the 1972 amendments, is not free from doubt. However, we consider our interpretation more faithful to the text of the statute and the legislative intent than that adopted by the Benefits Review Board.

The Board, with little analysis, determined that § 6(d) referred to only minimum death benefits. We can only surmise that the Board reached this conclusion by interpreting the phrase "[d]eterminations under this subsection" as relating just to the calculation of the national average weekly wage under § 6(b)(3).[17] Since in computing death benefits under § 9(e) the average weekly wages of a decedent are considered to have been "not less than the applicable national average weekly wage as prescribed in section 906(b)," 33 U.S.C. § 909(e) (Supp. 1976), the Board evidently concluded that § 6(d) affected only the calculation of the minimum death benefit. This interpretation of § 6(d) insured that the yearly determination of the national average weekly wage would apply to those already receiving the minimum death benefit as well as those newly awarded minimum benefits under § 9(e).

We find this construction at odds with both the terms of the statute as well as the legislative history. There is nothing in the

---

**17.** 33 U.S.C. § 906(b)(3) (Supp.1976) states:

(3) As soon as practicable after June 30 of each year, and in any event prior to October 1 of such year, the Secretary shall determine the national average weekly wage for the three consecutive calendar quarters ending June 30. Such determination shall be the

applicable national average weekly wage for the period beginning with October 1 of that year and ending with September 30 of the next year. The initial determination under this paragraph shall be made as soon as practicable after October 27, 1972.

text of § 6(d) from which we can conclude that the "determinations" to which § 6(d) refers, extend solely to the calculation of the national average weekly wage and not to the phase-in limitations upon benefits. Moreover, the Board's interpretation ignores the explanation of § 6(d) which appeared in both the Senate and House Committee reports. *See* p. 345 *supra*. As previously observed, § 6(d) was included in the statute to insure that those receiving disability or death benefits "less than the compensation they would receive if there were no phase-in" would have their payments increased as the ceiling moved to 200 per cent of the national average weekly wage. The language of Senate Report No. 72–1125 and H.R.Report No. 72–1441 dispels any notion that § 6(d) was intended to relate only to minimum death benefits.

Finally, we note that the Board's view of § 6(d) renders that section virtually superfluous in the statutory scheme. As construed in *Rasmussen*, § 6(d) in essence provides that minimum death benefits are to be redetermined annually based upon changes in the national average weekly wage. However, § 10(f) as amended, 33 U.S.C. § 910(f) (Supp.1976),[18] already provides for upward adjustments in minimum benefits based upon changes in the national average weekly wage. A mathematical calculation reveals that the effect of § 10(f) is identical to that of § 6(d) under the Board's theory.[19] Based upon our reading of the statute and its legislative history, we conclude that §§ 6(d) and 10(f) were not intended to be merely duplicative provisions. *See* S.Rep.No.92–1125, 92d Cong., 2d Sess. 5, 6 (1972); H.R.Rep.No.92–1441, 92d Cong., 2d Sess. (1972), 1972 U.S.Code Cong. & Admin.News, pp. 4698, 4700.

Our conclusion that § 6(d) imposes the limitations of § 6(b)(1) upon death benefit payments is consistent with the overall statutory scheme. Both death and disability benefits under the statute have always been subject to a maximum limitation.[20]

---

18. 33 U.S.C. § 910(f) (Supp.1976) provides:

(f) Effective October 1 of each year, the compensation or death benefits payable for permanent total disability or death arising out of injuries sustained after the date of enactment of this subsection shall be increased by a percentage equal to the percentage (if any) by which the applicable national weekly wage for the period beginning on such October 1, as determined under section 906(b) of this title, exceeds the applicable national average weekly wage, as so determined, for the period beginning with the preceding October 1.

19. Petitioner's Brief at pp. 35–36 n. 19 illustrates this point:

If $x$ represents this year's national average weekly wage, and $y$ represents next year's, the minimum death benefit for this year is $\frac{1}{2} x$, and the sole effect of § 6(d) as construed by the Board is that a person entitled to $\frac{1}{2} x$ this year will be entitled to $\frac{1}{2} y$ next year. But § 10(f) provides precisely the same thing: the percentage increase in the national average weekly wage is $\frac{y-x}{x}$; the amount of the increase under § 10(f) is this percentage multiplied by the current benefit rate, or $\frac{1}{2} x \left(\frac{y-x}{x}\right)$; hence next year's rate —under § 10(f) alone, without reference to § 6(d)—will be this year's plus the increase, or $\frac{1}{2} x + \frac{1}{2} x \left(\frac{y-x}{x}\right)$. That this will always be precisely the same as the rate for next year which would result from application of § 6(d) as the Board has construed it is thus a mathematical certainty; for $\frac{1}{2} x + \frac{1}{2} x \left(\frac{y-x}{x}\right) = \frac{1}{2} x + \frac{1}{2} (y-x) = \frac{1}{2} x + \frac{1}{2} y - \frac{1}{2} x = \frac{1}{2} y$.

Put another way, a person's benefits will always remain precisely the same percentage of the national average weekly wage, by operation of § 10(f) alone. Hence a person receiving 50 percent of the national average this year will receive 50 percent of next year's national average next year, simply by virtue of § 10(f). If § 6(d) is construed to do nothing more than specify that minimum benefits even in old cases will always be based on the *current* national average wage, its effect would have followed anyway, as a matter of mathematical certainty, from § 10(f); and § 6(d) is mere surplusage. . .

20. *See* Brief for Petitioner at 14 n. 6 and 70 Stat. 654; 62 Stat. 602; 44 Stat. 1424.

However, the legislative history of the 1972 amendments does not even suggest that death benefits are no longer to be limited in amount. Indeed, the little legislative history available concerning § 6(d) leads us to conclude that only a new type of limitation has been adopted.

Moreover, both the Senate and House committees which were involved in drafting the amendments gave "careful consideration" to the recommendations of the National Commission on State Workmen's Compensation Laws contained in its report of July, 1972. S.Rep.No.92–1125, 92d Cong., 2d Sess. 2 (1972); H.R.Rep.No.92–1441, 92 Cong., 2d Sess. (1972), 1972 U.S.Code Cong. & Admin.News, pp. 4698, 4699. The Senate Committee on Labor and Public Welfare concluded that the provisions of the Senate bill, which was enacted into law, was "fully consistent with the recommendation of the National Commission. . . ." S.Rep. No.92–1125, 92d Cong., 2d Sess. 2 (1972). In this connection it is interesting to note that the National Commission recognized that "the arguments . . . concerning the maximum weekly benefits for temporary and permanent disabilities are equally applicable for death cases." The Report of the National Commission on State Workmen's Compensation Laws 71 (1972). Therefore, the Commission recommended that death benefits, like disability benefits, be limited after a phase-in period to "at least 200 per cent of the State's average weekly wage." *Id.* at 72. Our conclusion that death benefits are limited in amount is thus consistent with both the language of the statute and all the sources of legislative history available for our consideration.

## VI.

Having determined that death benefits under the 1972 amendments to the LHWCA are subject to the limitations provided in § 6(b)(1), 33 U.S.C. § 906(b)(1) (Supp.1976), we will grant the petition for review and remand to the Benefits Review Board for proceedings consistent herewith.

## APPENDIX A

§ 5(a) of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972:

Sec. 5. (a) Section 6 of the Longshoremen's and Harbor Workers' Compensation Act is amended by striking out subsection (b) and inserting in lieu thereof the following new subsections:

"(b)(1) Except as provided in subsection (c), compensation for disability shall not exceed the following percentages of the applicable national average weekly wage as determined by the Secretary under paragraph (3):

"(A) 125 per centum or $167, whichever is greater, during the period ending September 30, 1973.

"(B) 150 per centum during the period beginning October 1, 1973, and ending September 30, 1974.

"(C) 175 per centum during the period beginning October 1, 1974, and ending September 30, 1975.

"(D) 200 per centum beginning October 1, 1975.

"(2) Compensation for total disability shall not be less than 50 per centum of the applicable national average weekly wage determined by the Secretary under paragraph (3), except that if the employee's average weekly wages as computed under section 10 are less than 50 per centum of such national average weekly wage, he shall receive his average weekly wages as compensation for total disability.

"(3) As soon as practicable after June 30 of each year, and in any event prior to October 1 of such year, the Secretary shall determine the national average weekly wage for the three consecutive calendar quarters ending June 30. Such determination shall be the applicable national average weekly wage for the period beginning with October 1 of that year and ending with September 30 of the next year. The initial determination under this paragraph shall be made as soon

as practicable after the enactment of this subsection.

"(c) The maximum rate of compensation for a nonappropriated fund instrumentality employee shall be equal to 66⅔ per centum of the maximum rate of basic pay established for a Federal employee in grade GS–12 by section 5332 of title 5, United States Code, and the minimum rate of compensation for such an employee shall be equal to 66⅔ per centum of the minimum rate of basic pay established for a Federal employee in grade GS–2 by such section.

"(d) Determinations under this subsection with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period."

P.L. 92–576, 86 Stat. 1251.

ALDISERT, Circuit Judge (dissenting).

I cannot accept the majority's strained construction of the 1972 Amendments, a construction which has the effect of denying Elizabeth O'Keefe benefits to which, in my view, she is entitled under the Act. In the face of Congress' obvious primary concern for the needs of claimants, the majority has done what Congress did not do: it has carried forward the limitation of benefits, to the boon of employers and their insurance companies and to the bane of claimants.

The question before this court is purely one of statutory construction. I readily concede that there is logical form to the majority's interpretation. But almost eight decades ago the great Holmes would teach: "Behind the logical form lies a judgment as to the relative worth and importance of competing legislative grounds, often an inarticulate and unconscious judgment, it is true, and yet the very root and nerve of the whole proceeding. You can give any conclusion a logical form. You always can

imply a condition in a [statute]. But why do you imply it? It is because of some belief as to the practice of the community or of a class, or because of some opinion as to policy . . . ." [1]

It is a fundamental difference as to policy that separates me from my brothers of the majority. Like them, I find nothing in the statute itself which applies the maximum limitation of § 6(b)(1) to death benefits; like them, I find no specific indication of a legislative intent to apply such a limitation; unlike them, however, I have no inclination to construct or endorse a *tour de force* that resembles more an *apologia* for Herbert Spencer's Social Statics [2] than a reflection of Twentieth Century legislative and jurisprudential concerns for widows and orphans of American workers. Accordingly, I would deny the petition for review and accept the interpretation of the Benefits Review Board.

I associate myself completely with the well-reasoned, unanimous opinion of the Benefits Review Board in *Rasmussen v. Geo Control, Inc.,* BRB Nos. 74–204 and 74–204a (April 3, 1975):

In these appeals, the employer and carrier and the Director, Office of Workers' Compensation Programs, contend that death benefits awarded pursuant to Section 9 of the Act are limited by the maximum weekly amount provided for disability benefits in Section 6(b)(1). 33 U.S.C. §§ 906(b)(1), 909. . . .

The clear language of Section 9(b) of the Act, 33 U.S.C. § 909(b), provides the method of computation of death benefits and prescribes the maximum amount payable:

". . . [T]he total amount payable shall in no case exceed 66⅔ per centum of such [average weekly] wages. . . ."

Prior to amendment of the Act in November 1972, Section 9(e), 33 U.S.C. § 909(e), had provided both a maximum limit and a minimum limit in computation

---

1. Holmes, *The Path of the Law,* 10 Harv.L.Rev. 457 (1897), reprinted in R. Aldisert, The Judicial Process 34 (1976).

2. *See generally* the dissenting opinion of Mr. Justice Holmes in *Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905).

of death benefits. The maximum provided was, in effect, $70.00 per week, the same maximum limit prescribed by Section 6(b), 33 U.S.C. § 906(b), for disability payments at that time. However, in amending the Act, Congress eliminated the maximum and retained only a minimum limit. Section 9(e) now reads as follows:

"In computing death benefits the average weekly wages of the deceased shall be considered to have been not less than the applicable national average weekly wage as prescribed in section 6(b) but the total weekly benefits shall not exceed the average weekly wages of the deceased." 33 U.S.C. § 909(e).

Elimination of the provision limiting the maximum amount payable in death benefits to the same figure provided for disability compensation creates an anomalous situation. If an employee were rendered permanently, totally disabled by an employment-related accident, his maximum compensation would be limited by the provisions of Section 6(b)(1) of the Act, 33 U.S.C. § 906(b)(1), no matter what his actual average weekly wage was. If the same employee subsequently died, or if he had been killed outright in the accident, his survivors could be entitled to a larger sum in death benefits than was payable in disability compensation.

Given this apparent incongruity, the Board finds it appropriate to look beyond the plain language of the statute and consider persuasive evidence of legislative intent. *Boston Sand and Gravel Co. v. United States,* 278 U.S. 41, 49 S.Ct. 52, 73 L.Ed. 170 (1928). We are mindful that in construing a statute, the intent of Congress is to be ascertained and given effect. *United States v. N. E. Rosenblum Truck Lines, Inc.,* 315 U.S. 50, 62 S.Ct. 445, 86 L.Ed. 671 (1942). However, in construing a statute, a court must construe what Congress has written and may neither add, subtract, delete nor distort words used. *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States,* 340 U.S. 593, 71 S.Ct. 515, 95 L.Ed. 645 (1951). Moreover, although consistent administrative construction of a

statute is entitled to great weight in interpreting the statute, *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), a court need not defer to the administrative construction when there are compelling indications that it is wrong, *Espinoza v. Farah Manufacturing Co., Inc.,* 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). Where the words of a later statute differ from those of a previous one on the same or related subject, the legislature must have intended them to have a different meaning. *Klein v. Republic Steel Corp.,* 435 F.2d 762 (3d Cir. 1970). Finally, where Congress has carefully employed a term in one place but excluded it in another, it should not be implied where excluded. *J. Ray McDermott and Co. v. Vessel Morning Star,* 457 F.2d 815 (5th Cir. 1972), *cert. denied sub nom., Fish Meal Co. v. J. Ray McDermott and Co.,* 409 U.S. 948, 93 S.Ct. 271, 34 L.Ed.2d 218 (1972).

In his Decision and Order in this case, the administrative law judge exhaustively analyzed the applicable provisions of the Act and the relevant legislative history. Having reviewed that Decision and Order in light of the principles enumerated in the preceding paragraph, the Board concludes that the administrative law judge correctly determined that the maximum limit on disability compensation according to the provisions of Section 6(b)(1) of the Act does not apply to death benefits awarded under Section 9(b). 33 U.S.C. §§ 906(b)(1), 909(b).

The Report of the Senate Committee on Labor and Public Welfare, which described the major provisions of the bill amending the Act, discussed maximum and minimum benefit amounts. With reference to survivor benefits, the report states,

". . . The amended Act will provide a fifty percent award to surviving wives or husbands and 16⅔ percent to the children, subject to a maximum of 66⅔ percent of the average weekly wages.

. . . . .

"A minimum death benefit tied to the applicable national average weekly wage, but not to exceed the employee's average

weekly wage is also provided." S.Rep. No.92–1125, 92d Cong.2d Sess. 6 (1972).

In its section-by-section analysis of the bill to amend the Act, the Senate Committee referred to the amendment creating a new Section 6(b)(1), 33 U.S.C. § 906(b)(1), only in terms of compensation for disability; death benefits were not referred to either specifically or by implication. The pertinent section reads,

"*Section 5(a)* [of the bill] amends the Act by deleting subsection 6(b) and substituting new sections (b), (c) and (d).

"Subsection (b)(1) states that, except as provided in subsection (c), compensation for disability may not exceed the following percentages of the applicable national average weekly wage as determined by the Secretary under paragraph (3) . . . ." S.Rep.No.92–1125, 92d Cong.2d Sess. 17 (1972).

In its discussion of death benefits, the Senate Committee indicated no intent to apply the maximum amount for disability compensation provided in Section 6(b)(1) to death benefits provided by Section 9(b). 33 U.S.C. §§ 906(b)(1), 909(b). The report merely states that,

"*Subsection 10(b)* [of the bill] amends Section 9(b) and (c) to increase all 35 percent shares of death benefits therein to 50 percent and all 15 percent shares to 16⅔ percent." S.Rep.No.92–1125, 92d Cong.2d Sess. 21 (1972).

It is clear that Congress did intend to relate the *minimum* disability compensation provided by Section 6(b)(1), 33 U.S.C. § 906(b)(1), to death benefits. Both the language of the Act and the legislative history make this apparent. In the legislative history, it is stated that,

"*Section 10(d)* [of the bill] amends Section 9(e) to provide that in computing death benefits the employee's average weekly wage shall be considered as not less than the national average weekly wage. However, maximum weekly death benefits could not be more than the employee's average weekly wages." S.Rep. No.92–1125, 92d Cong.2d Sess. 22 (1972).

However, no reference is made to application of the Section 6(b)(1) maximum to death benefits. 33 U.S.C. § 906(b)(1). The former provision in Section 9(e), 33 U.S.C. § 909(e), which set a maximum amount on death benefits, was eliminated from the amendment. In the absence of any evidence to the contrary, we must conclude that elimination of the maximum provided for disability cases from death benefits cases was intentional. The maximum limit on death benefits is provided in Section 9(b), 33 U.S.C. § 909(b), and relates solely to the employee's actual weekly wages.

The summary of principal amendments in the Report of the Committee on Education and Labor of the House of Representatives closely parallels the Senate Report. It is, therefore, unnecessary to discuss those provisions of that Report. They are merely cumulative of the indication of legislative intent contained in the Senate Report. Pertinent comments are contained in the "*Summary of Major Provisions of the Bill*." H.R.Rep.No.92–1441, 92d Cong.2d Sess. 2–4 (1972), U.S.Code Cong. & Admin.News, p. 4700.

In its "*Section-by-Section Description of Committee Amendment to the Bill*", the House Report contains language which indicates that elimination of the maximum benefit provision from Section 9(e) of the Act, 33 U.S.C. § 909(e), was done consciously and intentionally:

"Subsection (d) of this section amends section 9(e) of the Act, eliminating the dollar minimum and maximum set out under present law for the average weekly wages of the deceased to be used in computing death benefits. The minimum substituted by this amendment is the applicable national average weekly wage as prescribed in section 6(b) of the Act, except that the total weekly benefits may not exceed the actual average weekly wages of the deceased." H.R.Rep.No.92–1441, 92d Cong.2d Sess. 19 (1972), U.S. Code Cong. & Admin.News, p. 4716.

This language suggests that the Committee was aware that both the maximum and minimum benefit provisions were being

eliminated from the old Act and that only a revised minimum benefit was substituted. There is no evidence whatever to suggest that failure to substitute a new maximum was anything other than a deliberate action.

It is argued that Section 6(d) of the amended Act refers to both maximum and minimum benefits payable under Section 9 so that both the maximum and minimum compensation payable under Section 6(b) also apply to death benefits awarded pursuant to Section 9. 33 U.S.C. §§ 906(b), 906(d), 909. Section 6(d) reads as follows:

> "Determinations under this subsection with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period." 33 U.S.C. § 906(d).

The administrative law judge found that this provision refers only to minimum benefits. The Director argues that this provision can be reasonably construed only if it refers to both maximum and minimum benefits, because the redetermined national average weekly wage does not apply to survivors currently receiving benefits. However, Section 10(h) of the Act, 33 U.S.C. § 910(h), provides for an upward adjustment of death benefits for persons currently receiving such benefits, calculated with reference to the redetermined national average weekly wage. Therefore, the Board finds that the administrative law judge correctly construed Section 6(d) as applying only to minimum benefits. 33 U.S.C. § 906(d).

Appendix 17–24.