**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, Petitioner,**

v.

**GENERAL DYNAMICS CORPORATION, and Williams Krotsis, Benefits Review Board, Respondents.**

**No. 192, Docket 89–4067.**

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1989.

Decided March 26, 1990.

Samuel J. Oshinsky, U.S. Dept. of Labor, Office of the Sol., Washington, D.C. (Robert P. Davis, Sol. of Labor, Carol A. DeDeo, Associate Sol., J. Michael O'Neill, Counsel for Longshore, U.S. Dept. of Labor, Washington, D.C., of counsel), for petitioner.

Norman P. Beane, Jr., Boston, Mass. (Diane M. Broderick, Murphy & Beane, Boston, Mass., of counsel), for respondents.

Before KAUFMAN, FEINBERG and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

We have before us a petition by the Director of the Office of Workers' Compensation Programs (Director) for review of a final order of the Benefits Review Board (Board) of the United States Department of Labor. The order affirms a decision made by the Administrative Law Judge (ALJ) in resolving a claim for hearing loss, partially incurred while at work, made by a worker against his employer. The appeal presents us with varying definitions of "prior payments," "previous claims" and "subsequent injuries" in a way that hides the reality of their meaning underneath confusing semantics. The Director claims that a prior voluntary payment made by an employer to compensate a worker injured on the job is money that the employer has, in effect, donated to the "special fund" established under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 944. After studying this and the other arguments closely, we conclude that the Director's petition for review should be denied.

## FACTS AND PROCEEDINGS BELOW

The facts are not in dispute. Claimant, William Krotsis, began working as an employee for General Dynamics Corporation as a painter in 1969. At his pre-employment physical an audiogram indicated that he suffered from a hearing loss. During his employment Krotsis was exposed to excessive noise, and in 1979 he filed a claim against his employer seeking compensation for the increased hearing loss resulting from it. The parties attempted to settle the claim pursuant to § 908(i) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 908(i) (1982) (Act). The settlement amounted to $16,179.47 based upon a stipulated total hearing loss of 36.63 percent. The deputy commissioner who reviewed the settlement, *see* 33 U.S.C. § 908(i) (amended 1984), found that Krotsis had in fact suffered from a greater degree of hearing loss than 36.63 percent, determined that the settlement was not in Krotsis' best interests, and refused to approve it. General Dynamics nonetheless voluntarily paid claimant the agreed upon $16,179.47 on June 23, 1980. Krotsis took no further action on his 1979 claim.

He continued working and several years later, in October 1983, filed a second claim alleging an additional hearing loss. At a hearing held on June 12, 1985, the ALJ found that Krotsis suffered from a total hearing loss of 63.33 percent as of October 1983. The ALJ further found that Krotsis

had suffered from a hearing loss of 56.9 percent prior to his employment, based upon the pre-employment audiogram. He determined that although Krotsis was entitled to compensation for his entire hearing loss—including the major portion of it that existed prior to employment—General Dynamics was entitled to relief pursuant to § 908(f) of the Act, which limits an employer's liability for pre-employment disability. The section provides that the portion of an employee's disability that existed prior to employment be compensated in whole or in part by a "special fund" established pursuant to § 944 and administered by the Secretary of the Department of Labor through the Director.

The ALJ therefore held that the special fund was liable for the pre-employment hearing loss of 56.9 percent ($47,464.84 in compensation) and the employer was liable for the approximately 6.4 percent balance ($5,338.75 in compensation). He then credited the $16,179.47 paid Krotsis in 1980 towards the employer's present liability for the 1983 claim. Since the credit was larger than the current obligation, the special fund was ordered to reimburse General Dynamics for its $10,840.72 "overpayment." The ALJ also denied Krotsis' request that his employer pay a ten percent penalty pursuant to § 914(e) of the Act for its failure to controvert or pay on his 1983 claim within 14 days, concluding that the prior "overpayment" satisfied General Dynamics' obligation to pay Krotsis within 14 days of his 1983 claim.

The Director appealed to the Benefits Review Board, challenging the ALJ's decision insofar as it granted a credit for the employer's 1980 settlement towards its present liability for the 1983 claim. The Director asserted that the credit should have been applied instead to the special fund's liability. He argued that the $16,179.47 paid by General Dynamics in 1980 was compensation for a portion of Krotsis' pre-employment disability rather than compensation for any work-related injury because the amount paid Krotsis was based upon an assumed hearing loss of only 36.63 percent, considerably less than the actual 56.9 percent hearing loss that Krotsis had

prior to employment. The Director therefore contended that the 1980 payment to Krotsis should be credited against the special fund's liability for pre-employment disability, rather than against General Dynamics' liability for a work-related injury. Thus, the Director insisted that General Dynamics must pay its liability of $5,338.75, in full, without any benefit of a credit for the 1980 payment of $16,179.47. In addition, he questioned the ALJ's refusal to assess a penalty against General Dynamics pursuant to § 914(e) for its failure to controvert or pay on Krotsis' 1983 claim within the prescribed 14–day period. The Board affirmed the ALJ's decision in all respects.

## STATUTORY BACKGROUND

This matter is made complex by the interaction of four rules of law: (1) the "aggravation rule," (2) § 908(f) of the Act, (3) § 914(j) of the Act, and (4) the "credit doctrine." The first three rules arise under the Act, and the last is a creation of the Benefits Review Board.

The Act is a workers' compensation statute fixing disability benefits for maritime workers injured on the job. The aggravation rule is derived from the Act's language. *See, e.g., Strachan Shipping Co. v. Nash,* 782 F.2d 513, 517 (5th Cir.1986) (deriving aggravation rule from §§ 3, 2(10), and 8(f) of the Act). It provides that "where an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the *entire* resulting disability is compensable." (emphasis added). *Id.* at 517. Standing alone, this rule would create a strong disincentive for an employer to hire handicapped workers for fear of liability were their preexisting disabilities to be aggravated at work. Section 908(f) and the credit doctrine have been designed to mitigate such fears.

Section 908(f) provides, in pertinent part:
If following an injury falling within the provisions of subsection (c)(1)–(20) of this section, the employee has a permanent

partial disability and the disability is found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater, except that, in the case of an injury falling within the provisions of subsection (c)(13) of this section, the employer shall provide compensation for the lesser of such periods.

33 U.S.C. § 908(f)(1) (Supp. IV 1986).

Consequently, an employer must pay compensation for at least 104 weeks for any aggravated disability listed in subsections (c)(1)–(20) with the exception of hearing loss, the disability listed in subsection (c)(13). Further, if a work-related injury *creates* an additional degree of disability which requires more than 104 weeks compensation, § 908(f) requires that the employer pay at least the amount which covers the entire work-related disability. If the added disability is scheduled for less than 104 weeks compensation in subsections (c)(1)–(12) and (14)–(20), the employer pays for more than the work-related disability, i.e., the employer pays for some of the pre-existing disability. But if the schedule calls for 104 weeks or more, the employer's payment will cover only the work-related injury and none of the pre-existing disability. Only in the case of certain disabilities under (c)(13) might the employer pay less than the amount of compensation corresponding to the work-related injury.

The exception for hearing loss under subsection (c)(13) was created by Congress when it amended the statute in 1984. Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, § 8(e)(1), 98 Stat. 1639, 1645 (1984) (codified, as amended, at 33 U.S.C. § 908(f)(1) (Supp. IV 1986)). When an employee makes a claim for an aggravated hearing loss today under subsection (c)(13), as did Krotsis, the employer is liable for the *lesser* of 104 weeks compensation or compensation for the number of weeks corresponding to the degree of work-related hearing loss. In some instances, where work-related injury creates more than an additional 52 percent hearing loss—that is, where the "subsequent injury alone" would require more than 104 weeks compensation—the employer need only pay 104 weeks compensation—less than that which would cover the entire work-related injury. Nonetheless, since Krotsis' employment added only 6.4 percent hearing loss to his pre-existing disability, General Dynamics was in fact liable for the entire work-related injury.

■ The other device used to mitigate the aggravation rule is the "credit doctrine"—an extra-statutory doctrine developed by the Benefits Review Board to prevent double recoveries when a worker has already been compensated for an existing disability. The amount of any prior compensation to a claimant for a particular disability is credited against the total amount due for the pending claim. Hence, if a worker has received compensation for a work-related disability and later claims that the disability has worsened, though he may legally claim compensation for the entire disability under the aggravation rule, the credit doctrine modifies the aggravation rule by requiring that any compensation already received be subtracted from the amount due on the pending claim. *See Strachan*, 782 F.2d at 518–22.

The last rule of law involved in this case, and the one which is perhaps most important for its resolution, is § 914(j), which provides: "If the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due." 33 U.S.C. § 914(j) (Supp. IV 1986). The ALJ and the Board characterized the employer's voluntary payment of $16,179.47 in 1980 as "a voluntary payment of compensation in advance of an award," and credited that payment to the employer under § 914(j).

## DISCUSSION

### I  *Standard of Review*

■ The dispute that calls for an interpretation of these various rules is one be-

tween the Benefits Review Board, an adjudicatory arm of the Department of Labor, and the Director of the Office of Workers' Compensation Programs, to whom the Secretary of the Department of Labor has delegated the power to administer the Act. The first question we must answer is whether the Director is entitled to any greater deference in his interpretation of the Act than that which we must give the Board.

The Supreme Court has suggested that the Board's views are not entitled to special deference from a reviewing court because it performs only an adjudicatory function and is not charged with administering the Act. *See Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514–15 n. 18, 66 L.Ed.2d 446 (1980). Less clear is whether the Director's interpretations are entitled to special deference, because he is charged with administering the Act. Neither the Supreme Court nor this Circuit has had occasion to address this question, but several of our sister circuits have ruled on it. Four have assumed that the Director's interpretations of statutes are entitled to special deference. *See Director, Office of Workers' Compensation Programs v. Palmer Coking Coal Co.*, 867 F.2d 552, 555 (9th Cir.1989); *Saginaw Mining Co. v. Mazzulli*, 818 F.2d 1278, 1283 (6th Cir.1987); *Peabody Coal Co. v. Director, Office of Workers' Compensation Programs*, 773 F.2d 173, 175 (7th Cir.1985); *Boudreaux v. American Workover, Inc.*, 680 F.2d 1034, 1046 & n. 23 (5th Cir.1982) (en banc), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). Another circuit has held that neither the Director's nor the Board's interpretations of the Act are entitled to deference. *Director, Office of Workers' Compensation Programs v. O'Keefe*, 545 F.2d 337, 343 (3rd Cir.1976). Considerable doubt is cast on *Saginaw Mining* because two more recent Sixth Circuit cases held that neither the Benefits Review Board nor the Director is entitled to special deference. *See Director, Office of Workers' Compensation Programs v. Detroit Harbor Terminals*, 850 F.2d 283,

287 (6th Cir.1988); *American Ship Bldg. Co. v. Director, Office of Workers' Compensation Programs*, 865 F.2d 727, 730 (6th Cir.1989). *Detroit Harbor* relied on the Third Circuit's rationale set forth in *O'Keefe*, which we also find persuasive. *O'Keefe* noted the different functions discharged by the Director and the Board and observed that Congress had divided responsibility for administering the Act into two separate offices of the Department of Labor. *See* 545 F.2d at 343.

Further, when the Director appears as a litigant in an adversarial proceeding before the Board it is inappropriate to grant special deference to the Director's litigating position, particularly when that position has not been articulated in a more objective context through the promulgation of regulations. If deference were accorded under such circumstances, claimants would be effectively deprived of the right to impartial review. *See Williams Bros., Inc. v. Pate*, 833 F.2d 261, 265 (11th Cir.1987); *see also Director, Office of Workers' Compensation Programs v. Mangifest*, 826 F.2d 1318, 1324 (3rd Cir.1987) (reviewing courts need not defer to agency's interpretation of statute which arose only during adversary proceeding). More specifically, in light of the relationship between the roles of the Board and the Director in resolving questions of law, and the Director's adversarial position in this litigation, the Director's interpretation of the Act here is not entitled to any special deference.

## II  *The Board's Decision*

■ The Board found that Krotsis' 1979 claim remained open, and that it had "merged" into the 1983 claim since it had never been adjudicated and no order resolving it had ever been issued. The Board held that when Krotsis filed his 1983 claim, the disability for which he had made a claim in 1979 was subsumed by the later claim for 63.33 percent hearing loss (56.9 percent pre-existing hearing loss and 6.4 percent work-related hearing loss). In effect, the Board's holding eliminated the 1979 claim, leaving only the 1983 claim extant. Having done so, the Board then

characterized General Dynamics' payment of $16,179.47 in 1980 as a "voluntary payment of compensation in advance of an award," pursuant to § 914(j). Hence, the primary issue on appeal is not whether the Board properly applied the credit doctrine, but whether it properly found that General Dynamics' payment of $16,179.47 in 1980 was a payment of compensation in advance of an award for Krotsis' 1983 claim.

In *McCabe Inspection Serv. v. Willard*, 240 F.2d 942 (2d Cir.1957), we held that an employer's payments to an injured employee would be considered "advance payments of compensation" under § 914(k) (now § 914(j)), even though such payments were made before the employer knew there was a permanent injury and did not label the payments as advance payments due under the Act. 240 F.2d at 943. In *McCabe*, the claimant, who was receiving a salary of $84 per week, suffered from both a temporary total disability and a permanent partial disability. For each disability he was due compensation under the Act. During the period of temporary total disability—when the claimant performed no services—the employer continued to pay him $84 per week pursuant to company policy despite the fact that the Act's scheduled compensation was only $35 per week. The issue was whether the $49 per week difference should be considered advance payments of compensation—and therefore credited under § 914(k) against the employer's subsequent liability for the permanent partial disability—or wages.

We held that the Act " 'should be administered and interpreted so as to encourage employers to comply with all of its requirements with celerity and not to penalize those who humanely and more than sufficiently meet the demands of the law.' " *Id.* (quoting *State Compensation Ins. Fund v. Pillsbury*, 27 F.Supp. 852, 853 (S.D.Cal. 1939)). A denial of credit for prior voluntary payments made outside of the Act's provisions "might well cause the open handed employer to pause lest the sum of his voluntary payments and possible subsequent awards exceed the amount he is able or willing to pay. Such a rule would not only unjustly favor the less generous em-

ployer, but would also diminish the employee's chances for prompt financial assistance when he needs it most." 240 F.2d at 943.

*McCabe* is most persuasive. General Dynamics' 1980 payment was voluntary and made outside of the scope of the Act. Contrary to the Director's assertion, it cannot be considered scheduled compensation for any portion of Krotsis' preexisting disability because it was never approved by the Deputy Commissioner. Section 908(i)(A) indicates that disapproved settlements will not discharge any of an employer's liability for a claim. Thus, because the settlement was not approved, the 1979 claim remained unsettled, and payments the employer made cannot be compensation for Krotsis' preexisting disability. Under *McCabe* such a payment may be credited as compensation in advance of an award, even though the employer did not foresee the later claim. *See* 240 F.2d at 943.

There is a crucial distinction between this case and *Director, Office of Workers' Compensation Programs v. Bethlehem Steel Corp.*, 868 F.2d 759 (5th Cir.1989), upon which the Director relies. In *Bethlehem* there was no pre-employment disability. The payments Bethlehem made to its injured employee were compensation for entirely work-related injuries. In this case, the amount of compensation due for Krotsis' work-related injury is only $5,338.75 and General Dynamics has already paid $16,179.47. It is obviously entitled to a credit for the amount it paid in 1980 if the salutary effects of § 914(j) are not to be vitiated.

Further, even the amended language of § 908(i)(A) does not prevent an employer from receiving credit for payments made voluntarily to a claimant in the face of an unapproved settlement. In 1984 § 908(i)(A) was also amended. *See* 33 U.S.C. § 908(i)(1) (1988). The amended section makes it much more explicit that voluntary payments made on a disapproved settlement do not discharge an employer's liability. *Compare* 33 U.S.C. § 908(i)(A) (1982) *with* 33 U.S.C. § 908(i)(1) (1988). This prevents an employer from relying on a previ-

ous payment to shield itself from further liability. That is, it cannot claim that an injury has been fully compensated by a payment it made on a disapproved settlement. But there is nothing in § 908(i)(1)—either before or after its 1984 amendment—that prevents an employer from receiving credit for voluntary payments it has made outside of an approved settlement. Reading § 908(i)(1) to prohibit such credit would nullify § 914(j).

Crediting General Dynamics' 1980 payment towards its present liability is the most reasonable result in this case. Both parties agree that the employer's liability for Krotsis' disability should be $5,338.75, which represents compensation for Krotsis' total work-related disability of 6.4 percent hearing loss. If the employer's previous voluntary payment of $16,179.47 is not credited against its current liability but against the special fund's liability instead, the result effectively would be that the prior payment would be a gift to the special fund. We think that result is unreasonable and unjustified, and that the Board's order should be affirmed.

### III  *Section 914(e) Penalty*

■ The Board also affirmed the ALJ's refusal to assess a penalty against General Dynamics under § 914(e) for failing to pay or controvert Krotsis' 1983 claim within 14 days after it became aware of the claim or injury. *See* 33 U.S.C. § 914(b), (d) and (e) (1982 & Supp. IV 1986). In case of such failure, "there shall be added to such unpaid installment an amount equal to 10 per centum thereof, which shall be paid at the same time as, but in addition to, such installment. . . ." 33 U.S.C. § 914(e) (1982).

The ALJ ruled that although General Dynamics did not controvert the 1983 claim within fourteen days, its payment of $16,179.47 in 1980 acted as a payment on the 1983 claim, thus fulfilling its obligation to pay compensation within 14 days. The Board sustained the ALJ, but on the grounds that because Krotsis' 1979 claim remained open after its settlement was disapproved, General Dynamics' timely controversion of the 1979 claim constituted a timely controversion of the related 1983 claim.

We affirm the Board's decision refusing to assess a § 914(e) penalty, but adopt the grounds relied upon by the ALJ. As we have stated above, the money paid by General Dynamics in 1980 was a voluntary payment of compensation in advance of an award. According to § 914(j), this payment entitled the employer "to be reimbursed out of any unpaid installment . . . of compensation due." The amount of the 1980 payment was much greater than the amount General Dynamics owed to Krotsis on his 1983 claim. Since the employer did not need to make any further payments, no "installment of compensation" was due from it for the 1983 claim.

### CONCLUSION

We therefore affirm the Board's decision to credit General Dynamics with the $16,179.47 payment made in 1980, and its order that the special fund reimburse General Dynamics for the difference between the 1980 payment and the employer's liability of $5,338.75 for the 1983 claim, or $10,841.72. We also affirm the Board's decision not to assess a § 914(e) penalty against General Dynamics.

The petition for review is denied.