**LOVELADIES PROPERTY OWNERS ASSOCIATION, INC., a corporation of the State of New Jersey, et al.**

v.

**Max RAAB, et al.**

**Civ. A. No. 74–1549.**

United States District Court, D. New Jersey.

Nov. 24, 1975.

Stephen B. Patrick, Newfield, N. J., for plaintiffs.

Garry J. Roettger, Hiering, Grasso, Gelzer & Kelaher, Toms River, N. J., for defendant Raab.

A. Patrick Nucciarone, Asst. U. S. Atty., Newark, N. J., for remaining defendants.

OPINION

BARLOW, District Judge.

This case arises out of land-filling operations conducted by defendant Max L. Raab on property located on the edge of Barnegat Bay in Long Beach Township, New Jersey. The filling was performed between October and December of 1972. Raab received no prior authorization for his activities from the Environmental Protection Agency (hereinafter "EPA") or the Army Corps of Engineers (hereinafter "COE"). Plaintiffs, which are three associations of taxpayers and property-owners in the Long Beach Island area, contend that Raab's non-approved filling operations were violative of the Rivers and Harbors Act of 1899, 33 U.S.C. § 401, *et seq.*, and the Federal Water Pollution Control Act Amendments of 1972 (hereinafter "FWPCAA"), 33 U.S.C. § 1251, *et seq.* In the present action, plaintiffs seek to compel the EPA and COE to determine whether Raab's activities were proper and should be approved.

The procedural background of this case is significant. In late 1972, COE personnel observed Raab's filling operations. Colonel Carroll Strider, Chief of the COE's Philadelphia office, wrote to Raab and directed him to cease all filling activity, and to apply to the COE for an after-the-fact permit. Raab had already completed his filling operations by the time he received Colonel Strider's letter. He did submit an application for an after-the-fact permit in early 1973. Upon a more thorough investigation, the COE determined that the filling operations occurred above the "mean high water line" and, therefore, were beyond what the COE conceives to be its statutory jurisdiction. But see *United States v. Holland*, 373 F.Supp. 665 (M.D.Fla.1974). Accordingly, COE did not rule on the merits of Raab's application for a permit, even though considerable opposition to the grant of a permit had been received from individuals, organizations, and state and federal agencies. The COE's determination was communicated to Raab in October, 1974. The EPA apparently was requested to exercise its jurisdiction, but refused to do so. Accord-

ingly, plaintiffs initiated the present lawsuit.[1] The case is now before the Court on defendants' motions to dismiss the complaint and on the parties' cross-motions for summary judgment.

The federal statutory scheme regarding the discharge of fill materials into United States waters may be briefly summarized as follows: Section 404 of the FWPCAA, 33 U.S.C. § 1344, authorizes the Secretary of the Army, acting through the COE, to issue permits to persons desiring to discharge fill materials into the navigable waters of the United States.[2] Section 301(a) of the FWPCAA, 33 U.S.C. § 1311(a), makes the discharge of fill material, without a permit, unlawful. Finally, § 309(3) of the FWPCAA, 33 U.S.C. § 1319(3), requires the Administrator of the EPA to issue an order requiring compliance or to institute a civil action once he determines that a person has discharged fill materials without a permit, in violation of 33 U.S.C. § 1311. In the present case, the COE and the EPA have refused to act under this statutory framework—apparently concluding that Raab did not deposit fill in the *navigable* waters of the United States.[3] Plaintiffs, of course, vigorously contest this conclusion. With this background in mind, we proceed to the motions presently before us.

At the outset, the defendants contend that the plaintiff organizations lack standing to bring this complaint. In *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Supreme Court set forth a twofold test for determining whether particular plaintiffs have standing to challenge administrative action. Under the *Data Processing* test, the court must inquire: (1) whether plaintiff suffered injury-in-fact from the challenged action, 397 U.S. at 152, 90 S.Ct. 827; and (2) "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question", 397 U.S. at 153, 90 S.Ct. at 830. Without doubt, the second *Data Processing* requirement is satisfied by the plaintiffs here—at least insofar as the complaint arises under the FWPCAA.[4] The inclusion of a "citizen suits" provision in the FWPCAA, 33 U.S.C. § 1365, indicates that Congress specifically intended that the interests of private citizens be protected by the Act.

1. Plaintiffs' original complaint named only Raab and the United States of America as party-defendants. The United States moved to dismiss on the grounds of sovereign immunity, lack of subject matter jurisdiction, and failure to state a claim upon which relief may be granted. Plaintiffs then consented to a dismissal of their suit against the United States, and subsequently filed an amended complaint naming as defendants the EPA, the COE, and various officials thereof. These defendants contend that the dismissal of the complaint against the United States should bar the present action against United States agencies and employees on the ground of *res judicata.* We are not satisfied that the *res judicata* doctrine is applicable here. In any event, in light of our dismissal of this case on other grounds, we need not consider that argument.

2. This section supplements a similar permit provision in the Rivers and Harbors Act of 1899, see 33 U.S.C. § 403.

3. The FWPCAA defines "navigable waters" broadly as "the waters of the United States", 33 U.S.C. § 1362(7). The United States District Court for the Middle District of Florida has concluded that the term "navigable waters", thus defined, provides no jurisdictional limitation on the reach of the FWPCAA. *United States v. Holland,* 373 F.Supp. 665 (M.D.Fla. 1974).

4. However, plaintiffs probably do not have standing under the Rivers and Harbors Act of 1899, 33 U.S.C. § 401, *et seq.* This Act was intended to protect the navigability of the nation's waterways. See Discussion of 1899 Act, *infra.* Plaintiffs here make no allegation that Raab's activities affect their interest in navigable waters. Rather, their concern seems to be purely environmental. Thus, they are not arguably "within the zone of interests" intended to be protected by the Rivers and Harbors Act. Moreover, as we later point out in this opinion, see Discussion of 1899 Act, *infra,* a private right of action cannot be implied from the Rivers and Harbors Act. The Supreme Court has pointed out the considerable overlap between the "standing" issue and the "implied right of action" issue. See *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 456, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

The issue remaining, then, is whether plaintiffs in the present case have alleged sufficient injury-in-fact to maintain their challenge to Raab's activities. In *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the Supreme Court discussed at length the injury-in-fact requirement:

"The trend of cases arising under the APA and other statutes authorizing judicial review of federal agency action has been toward recognizing that injuries other than economic harm are sufficient to bring a person within the meaning of the statutory language, and toward discarding the notion that an injury that is widely shared is *ipso facto* not an injury sufficient to provide the basis for judicial review. We noted this development with approval in *Data Processing,* 397 U.S., at 154, 90 S.Ct. [827] at 830, in saying that the interest alleged to have been injured 'may reflect "aesthetic, conservational, and recreational" as well as economic values.' But broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.

"Some courts have indicated a willingness to take this latter step by conferring standing upon organizations that have demonstrated 'an organizational interest in the problem' of environmental or consumer protection. *Environmental Defense Fund v. Hardin,* 138 U.S.App.D.C. 391, 395, 428 F.2d 1093, 1097. It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review. See, e. g., *NAACP v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405. But a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA. . . ." 405 U.S. at 738–9, 92 S.Ct. at 1367–8 (footnotes omitted).

Upon applying these principles in *Sierra Club,* the Supreme Court held that the Sierra Club did not have standing to challenge a proposed commercial development in Mineral King Valley, California, because the Club did not allege that its members used the Mineral King area for recreational, aesthetic, or other purposes. 405 U.S. at 735, 739–40, 92 S.Ct. 1361.

■ The allegations in the present case differ substantially from the *Sierra Club* allegations. Here, the plaintiffs do not merely allege that they have a generalized interest in conservation and the environment. Compare *Sierra Club v. Morton, supra,* 405 U.S. at 735, 739, 92 S.Ct. 1361. Instead, the plaintiff organizations allege that their members are "directly affected" by the ecological system of Barnegat Bay; that they enjoy the area's aesthetic benefits; that they use the area for recreational activities; and that the value of the properties they own in the area would be adversely affected by a deterioration in the environmental quality of the Bay. Clearly, these allegations of specific injury are sufficient to confer standing on the plaintiffs under the standards set forth in *Sierra Club.* See *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 683–90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Montgomery Environmental Coalition v. Fri,* 366 F.Supp. 261, 263–4 (D.D.C.1973).

■ While the plaintiffs thus have standing under the FWPCAA, their challenge to Raab's filling operations must nonetheless be dismissed for failure to comply with the procedural requirements of the Act's "citizen suits" provision, 33 U.S.C. § 1365. Section 1365 provides, *inter alia,* that an action against the EPA Administrator for failure to fulfill his duties may not be commenced prior to sixty (60) days after notice of the action has been given to the Administrator, 33 U.S.C. § 1365(b)(2). Similarly, an action against a private violator of the Act may not be commenced prior to sixty (60) days after notice of the action has been given to the Administrator, to the state in which the

alleged violation occurs, and to the alleged violator, 33 U.S.C. § 1365(b)(1). The EPA has published regulations specifically detailing who should receive the notice and what information should be contained in the notice. See 40 C.F.R. §§ 135.2 and 135.3. The plaintiffs herein have not complied with the notice provisions of § 1365 nor with the provisions of the EPA's regulations. Indeed, the Administrator of the EPA is not even named as a party to the lawsuit—even though § 1365 clearly contemplates that suits against the EPA should be directed at the Administrator.

■ Plaintiffs contend that the technical requirements of § 1365 should be ignored in the present case because the "spirit" of the requirements has been satisfied. Plaintiffs point out that they did notify the Regional Director of EPA more than sixty (60) days before filing their amended complaint. However, this Court is not at liberty to ignore the requirements of federal statutes and regulations—"technical" though they may appear to be. Where Congress provides a statutory method for obtaining review of administrative decisions, that method must be strictly adhered to. See *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *United States v. Ruzicka,* 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946); *SEC v. Andrews,* 88 F.2d 441 (2d Cir. 1937). The plaintiffs' failure to do so here compels the Court to dismiss their action under the FWPCAA. Compare *Pinkney v. Ohio Environmental Protection Agency,* 375 F.Supp. 305, 307–9 (N.D.Ohio 1974); *City of Highland Park v. Train,* 374 F.Supp. 758, 765–67 (N.D.Ill.1974).[5]

As jurisdictional alternatives to the FWPCAA, the plaintiffs seek to rely on the Rivers and Harbors Act of 1899, 33 U.S.C. § 401, *et seq.,* the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.,* and § 701, *et seq.,* and the federal mandamus statute, 28 U.S.C. § 1361. All of these claims must fail.

■ While this Court may have jurisdiction to hear plaintiffs' claim insofar as it "arises under" the Rivers and Harbors Act, see 28 U.S.C. §§ 1331 and 1337, the claim under that Act must nonetheless be dismissed for failure to state a claim upon which relief may be granted. In substance, the Rivers and Harbors Act provides for the assessment of civil and criminal penalties against persons or corporations who, without authorization, perform some activity which might impede the navigability of the nation's waterways. The Act contains no express authorization of private civil actions. Nor can such a private remedy fairly be implied from the text and purpose of the Act. See *Red Star Towing and Transportation Co. v. Department of Transportation of New Jersey,* 423 F.2d 104, 105–6 (3d Cir. 1970); cf. *Guthrie v. Alabama By-Products Co.,* 328 F.Supp. 1140, 1144–9 (N.D.Ala. 1971), *aff'd,* 456 F.2d 1294 (5th Cir. 1972); n. 4, *supra.*

■ Similarly, plaintiffs cannot maintain this action on the authority of the Administrative Procedure Act. While the various circuits are irreconcilably split on the issue, compare, *e. g., Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529 (8th Cir. 1967) with *Pickus v. United States Board of Parole,* 165 U.S.App.D.C. 284, 507 F.2d 1107 (D.C.Cir. 1974), the clear law in the Third Circuit is that the Administrative Procedure Act does not create an independent jurisdictional basis for suits challenging government agency actions. *Chaudoin v. Atkinson,* 494 F.2d 1323, 1328

---

**5.** We are aware that several courts have held that the FWPCAA's "citizen suits" provision is not an exclusive remedy, and that claims arising under the FWPCAA also may be brought pursuant to the general federal question jurisdictional provision, 28 U.S.C. § 1331—thereby avoiding the procedural requirements of the "citizen suits" provision. See, *e. g., Natural Resources Defense Council v. Train,* 166 U.S. App.D.C. 312, 510 F.2d 692, 698–704 (D.C.Cir. 1975); *Conservation Society of Southern Ver-*

*mont v. Secretary of Transportation,* 508 F.2d 927, 938–9 (2d Cir. 1974); cf. *City of Highland Park v. Train, supra,* 374 F.Supp. at 767. This position finds support in the so-called "savings clause" of the citizen suits provision, see 33 U.S.C. § 1365(e). However, plaintiffs in the present case do not purport to invoke general federal question jurisdiction, and, in any event, would be hard-pressed to satisfy the $10,000. jurisdictional amount requirement of 28 U.S.C. § 1331.

(3d Cir. 1974); *Zimmerman v. United States*, 422 F.2d 326, 330–32 (3d Cir. 1970), *cert. denied*, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970).

 Finally, the plaintiffs' attempt to invoke federal mandamus jurisdiction, 28 U.S.C. § 1361,[6] also must fail. Mandamus is an extraordinary remedy, available only in situations where government officials clearly have failed to perform non-discretionary duties. See *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1969). Moreover, mandamus is not available when an alternative adequate remedy exists. See *Ex parte Republic of Peru*, 318 U.S. 578, 584, 63 S.Ct. 793, 87 L.Ed. 1014 (1943); *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir. 1972), *rev'd on other grounds*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Carter v. Seamans, supra.*

In the present case, plaintiffs obviously have an alternative adequate remedy—that is, an action under the "citizen suits" provision of the FWPCAA. Such an action, if successful, would result in an order requiring the EPA to exercise jurisdiction over Raab's filling activities. In effect, plaintiffs would receive the complete relief sought in the present action. Where Congress establishes a statutory method for reviewing administrative action, as here, an aggrieved party cannot avoid compliance with the statutory process by bringing a mandamus action. See *Wilmot v. Doyle*, 403 F.2d 811, 816 (9th Cir. 1968).

In accordance with this opinion, defendants' motions to dismiss the complaint are granted. Plaintiffs' motion for summary judgment is denied.

---

**6.** This statute was enacted in 1962. The statute was not intended to enlarge the scope of mandamus relief, but, rather, was intended to make the remedy more readily available in districts outside the District of Columbia. See *Jarrett v. Resor*, 426 F.2d 213, 216 (9th Cir. 1970); *Carter v. Seamans*, 411 F.2d 767, 773

---

(5th Cir. 1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1969). See generally Byse & Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action*, 81 Harv.L.Rev. 308 (1967).